William H. Thomas, Appellant, *v.* William B. Gage, Respondent.

Contract for Making a Monument — Approval of Model — Exhaustion of Preliminary Right of Objection to Performance. A contract for the making and placing, at a stipulated price, of a stone monument, to consist in part of a human figure, provided that the vendee should "have the privilege of inspecting the monument when ready to letter, and if not as agreed it shall be made so without additional expense," and, also, that he was to have the right "to inspect the model when made in clay, and it is to be made to his entire satisfaction." *Held,* that after full opportunity had been given the vendee to inspect the model of the figure in clay, and he had then expressed himself substantially as satisfied with it in that form, he did not have the right, as matter of law, on seeing a photograph of a plaster cast of the model, to rescind the contract and prevent the contractor from proceeding with the work.

*Thomas* v. *Gage,* 84 Hun, 607, reversed.

(Argued June 9, 1898 ; decided October 4, 1898.)

Appeal from a judgment of the late General Term of the Supreme Court in the third judicial department, entered February 21, 1895, affirming a judgment in favor of defendant entered upon a nonsuit granted at Circuit.

The nature of the action and the facts, so far as material, are stated in the opinion.

*John Foley* for appellant. The granting of the motion for a nonsuit by the trial court was error. (*Gildersleeve* v. *Landon,* 73 N. Y. 609.) The time of performance mentioned in the contract, "by July 1, 1890, or as near thereafter as possible," gave plaintiff a reasonable time for performance, due regard being had to his means, engagements, etc. (2 Pars. on Cont. *498 ; 52 N. Y. 647 ; 83 N. Y. 300 ; Sedg. on Dam. *223, note ; 40 N. Y. 422 ; 63 N. Y. 8 ; 4 N. Y. 338 ; 89 N. Y. 36, 45.)

*Charles S. Lester* for respondent. The court properly construed the contract as securing to the defendant the right to be satisfied with the perfected model from which the statue was to be copied. (*Paul* v. *Travelers' Ins. Co.,*

112 N. Y. 479 ; *Hoffman* v. *Ætna Ins. Co.*, 32 N. Y. 413 ;
*Steen* v. *Niagara F. Ins. Co.*, 89 N. Y. 324; *Kratzenstein*
v. *Western Ass. Co.*, 116 N. Y. 59 ; *Dennis* v. *Mass. B.
Assn.*, 120 N. Y. 503; *Dilleber* v. *Home L. Ins. Co.*, 69 N.
Y. 263, 264; *Springsteen* v. *Samson*, 32 N. Y. 703 ; *Knapp*
v. *Warner*, 57 N. Y. 668.) The parties themselves gave
to the contract the same construction as that given by the
court, and such construction is conclusive as to its mean-
ing. (*Nicoll* v. *Sands*, 131 N. Y. 24; *Woolsey* v. *Funke*,
121 N. Y. 92 ; *Mayor* v. *N. Y. R. C. Co.*, 8 Misc. Rep. 61, 65.;
*Stokes* v. *Recknagel*, 6 J. & S. 368.) The plaintiff wholly
failed to prove any cause of action whatever against the
defendant. (*Carver* v. *Tracy*, 3 Johns. 427 ; *Smith* v. *Jones*, 15
Johns. 229 ; *Gildersleeve* v. *Landon*, 73 N. Y. 609 ; *Grattan* v.
*Met. L. Ins. Co.*, 92 N. Y. 284; *Rouse* v. *Whited*, 25 N. Y. 170.)

O'BRIEN, J.   The plaintiff in this action sought to recover
damages for the breach of a written contract made with the
defendant on the 20th day of January, 1890, to make and place
on the defendant's lot in a cemetery a monument of stone,
according to a design and specifications stipulated in the con-
tract.   The plaintiff and his partner agreed to do the work
and furnish the material for the sum of $4,485, but the defend-
ant, before the completion of the work, rescinded the contract,
and the plaintiff's firm was thus prevented from executing the
agreement.   The plaintiff is the assignee of the contract, and
sues in his own name.
   The defense is that the contracting firm failed to perform
its part of the contract, and the defendant for that reason was
justified in rescinding.   The trial court directed a verdict for
the defendant.   The plaintiff, having given proof of damages,
requested that the case be submitted to the jury, which request
was denied, and to this ruling and the direction of the verdict
for the defendant an exception was taken.
   The contract provided that the monument should be made
to correspond in style and design with one in another ceme-
tery, described as the "Argersinger monument."   It appears

that this design was surmounted by a female figure of heroic size, in sitting posture, and it was upon the ground that the contractors were unable to produce this figure, or failed in the attempt, that the defendant claimed and exercised the right to rescind the contract.

The written agreement stipulated that the defendant should " have the privilege of inspecting said monument when ready to letter, and if not as agreed it shall be made so without additional expense." The defendant also was to have the right " to inspect model when made in clay, and it is to be made to his entire satisfaction." The time for the inspection of the monument itself, as a whole, was after it was completed and on the lot in the cemetery ready for lettering. If it did not then conform substantially to the design and specifications of the contract, the defendant clearly would have the right to refuse to accept it until it was made to comply with the requirement; but since the plaintiff was not permitted to advance the work to that stage, it could not be claimed that there was any breach of the contract in this respect.

The right to inspect the model in clay for the female figure was intermediate, and something to take place during the progress of the work. The purpose of that provision was to enable the defendant, while the figure was in the incipient stages of production by the artist, to exercise his judgment and taste, and make any suggestions as to changes that he thought necessary in order to make it conform to the original design for that part of the work which he had selected and embodied in the specifications of the contract. This model was a mere plan or design from which the sculptor or artist was to produce the female figure in stone.

It appears from the proofs that the process of making a statue is first to model it in clay, which may be kept soft and plastic by wetting. While in that form it may be changed by the artist and made to conform to the taste or fancy of his patron, and for this reason the contract gave the defendant the right to inspect the model while in that form; to make suggestions according to his taste and judgment, and to be sat-

isfied that it fairly represented the original design. He could not annul the contract by an arbitrary, fanciful or unreasonable objection, or by merely refusing to be satisfied, without a substantial reason. This provision of the contract contemplated substantial performance, and the production of a suitable model in clay on the part of the artist, and reasonable judgment on the part of the defendant. It also appears that the clay model, when moulded into the desired shape and form, is covered with plaster of paris so put on as to be readily taken off in sections when dry. The clay model has then fulfilled its purpose and is destroyed. The sections so taken off are then put together, making a complete plaster mould, and then plaster of paris is run into it, making a solid plaster of paris model.

In this case the artist completed the model in clay, notified the defendant, who fully inspected it and expressed his satisfaction with it. At least the jury could have found these facts from the evidence. But subsequently, after the clay model appeared in plaster, it seems that photographs of it were taken in that form and sent by the artist to the defendant, who found fault with the proposed figure as thus represented. This led to correspondence between the parties to the contract, in which the contractors and the artist expressed a desire to do everything reasonable to suit the taste or fancy of the defendant with respect to the production of the female figure which was to surmount the monument. It is evident from this correspondence that the defendant's taste and fancy with respect to this figure were somewhat ideal, and beyond the bounds which, a reasonable and practical construction of the contract would indicate; and it ended with an expression of opinion on the part of the defendant that it would be impossible for the artist who had modeled the figure to suit him, and so he declared the contract rescinded.

We think the ruling of the learned trial court that, as matter of law, he was justified in so doing was erroneous. In view of the evidence at the trial and the terms of the contract, the defendant was not entitled to have a verdict directed in his favor. At most, all he was entitled to was to have the

case passed upon by the jury, as a question of fact. The
learned counsel for the defendant does not dispute the fact
which appears from the evidence, that the defendant had full
opportunity to inspect the model in clay, or that he then
expressed himself substantially as satisfied with it while in that
form.    What is claimed is, that the defendant had the right
to object to the model, not only when represented in clay, but
subsequently when it was advanced to the form of a plaster
cast, and even when this cast was represented by a photograph.
This is not a fair or reasonable construction of the contract.
The meaning of the stipulation is that the defendant should
have the right to inspect the model in clay, to the end that he
might then make any objection or suggestion in regard to it
that was reasonable, since it was in such a form as to admit of
changes and development, in order to produce something
from which the statue was to be copied.    The contract was satis-
fied when the defendant was given full opportunity to examine
the model in clay, and at that stage of the work he was con-
cluded by his declaration, in substance, that it was satisfactory.

The contract did not require any photograph to be made or
exhibited, or provide for an inspection of the model when it
assumed the finished and permanent form of a plaster cast.    It
was still open to the defendant to object to the figure when
placed upon the monument, if it did not conform to the con-
tract, since the model is one thing and the statue itself quite
another thing.    The right to inspect and object to the model,
as such, existed only while it was in clay.    The right to object
to the figure itself remained to be exercised when the com-
pleted monument was placed in the cemetery.    The approval
by the defendant of the clay model would not preclude him
from objecting to the statue itself when produced, if, in fact,
it was not substantially according to the original design.    He
would not, by assenting to the model in clay, waive any right
to insist upon performance of the contract, which provided
that the figure should correspond with that upon another
monument designated.

When he was permitted to inspect the model in clay and

expressed satisfaction with it in that form, his right to inter-fere with the performance of the contract or arrest the work ceased. His right to make further objection to the work, or any part of it, was postponed to the time when it was placed upon the lot, and he was asked to accept and pay for it. He could then insist that the contractors had not produced the thing that they agreed to produce, if such was the fact, and refuse to pay the price. But if the monument, including the female figure, was substantially what they agreed ·to erect, then the defendant would be bound to pay for it, although he may not have been suited with the plaster cast of the figure when in that form, or the photographic representation of it. The model in clay was a mere instrumentality for producing the figure itself, as described and specified in the contract.

The defendant assumed in advance that the contractors either would not or could not perform the contract, and act-ing upon this assumption, he repudiated it before·performance was possible. There is nothing in the case to warrant the conclusion that if the contractors had been permitted to go on' with the work, they would not have produced the monument contracted for. The only question in the case is whether the contractors had so disregarded the terms of the contract with respect to the production and inspection of the model in clay as to justify the defendant in rescinding on his part, and we think that the evidence in the case would warrant the jury in finding that this provision of. the contract was complied with. To hold that the defendant, after inspecting the model in clay, and expressing satisfaction with it, could still defeat the per-formance of the contract, or rescind by objection to a photo-graphic representation of the model when produced in plaster, would be putting the contractors at the defendant's mercy, and placing a construction upon the contract not warranted by the language or the nature of the transaction.

The judgment should be reversed and a new trial granted, costs to abide the event.

All concur.

Judgment reversed, etc.