EINSTEIN v. TUTELMAN et al.

(Supreme Court, Appellate Term. June 3, 1908.)

1. LANDLORD AND TENANT—LEASES—CONSTRUCTION—PARTIAL DESTRUCTION OF PREMISES BY FIRE.

A lease provided that rent should be paid on the 1st of each month in advance, and that in case of fire, if the building should be damaged so as to render it untenantable, "the rent should cease until such time as the building shall be put in complete repair." A fire occurred on the 6th day of the month, and the building was untenantable for several days while repairs were being made. *Held*, that the operation of the lease was suspended as to accruing rent during the period of repairs, but the tenant was liable for rent for the time the building was tenantable.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 32, Landlord and Tenant, §§ 840–842]

2. SAME—ACTION FOR RENT—PLEADING—DEFENSES—COUNTERCLAIM.

There being an absolute obligation under the lease to pay the rent on the 1st day of the month in advance, the suspension of rent contemplated by the lease could not be pleaded as a "partial defense" thereto in an action for the rent, but as a counterclaim.

Appeal from City Court of New York, Trial Term.

Action by David L. Einstein against Abraham Tutelman and others. From a judgment granting inadequate relief, and an order denying him a new trial, plaintiff appeals. Reversed, and new trial ordered.

Argued before GILDERSLEEVE, P. J., and GIEGERICH and GREENBAUM, JJ.

Seligman & Seligman (Eugene Seligman, of counsel), for appellant. Kuntz & Oppenheim (A. Pinkney Wilkes, of counsel), for respondents

GIEGERICH, J. The action was brought to recover the sum of $541.67, the amount claimed by the plaintiff to be due as rent for the month of May, 1907, from the defendants as tenants, for premises occupied by them. The answer sets up as a partial defense that on the 6th day of May, 1907, the premises were damaged by fire and rendered untenantable, and so continued for a period of 15 days, up to May 21,

1907. After the action was commenced the defendants tendered to the plaintiff the sum of $300, with costs up to the time of such tender. The jury brought in a verdict in favor of the plaintiff for $289.34, which the plaintiff insists is inadequate.

The first point to be considered is whether, under the provisions of the lease in suit, the tenants are entitled to any allowance for the period during which the premises were rendered untenantable. The clause of the lease dealing with the point is as follows:

"And it is further agreed between the parties to these presents that, in case the building or buildings erected on the premises hereby leased shall be partially damaged by fire, the same shall be repaired as speedily as possible at the expense of said party of the first part; that, in case the damages shall be so extensive as to render the building untenantable, the rent shall cease until such time as the building shall be put in complete repair; but, in case the damage by fire or other elements shall amount substantially to the destruction of the building, the rent shall be paid up to the time of such destruction, and then and from thenceforth this lease shall cease and come to an end: Provided, however, that such damage and destruction be not caused by the carelessness, negligence, or improper conduct of the parties of the second part, their agents, or servants."

On behalf of the plaintiff it is insisted that, as the rent sued for became due before the fire, the trial court should have granted his motion for the direction of a verdict for the full amount, citing Werner v. Padula, 49 App. Div. 135, 63 N. Y. Supp. 68, and Craig v. Butler, 83 Hun, 286, 31 N. Y. Supp. 963. In both cases cited, the demised premises had been totally destroyed by fire, and the provision construed was that:

"The rent shall be paid up to the time of such destruction, and then and from thenceforth the lease shall cease and come to an end."

The present case is not one of total destruction, but one where the damage was "so extensive as to render the building untenantable," and the provision is, not that the lease shall cease, as is the fact in the event of a total destruction, but that "the rent shall cease until such time as the building shall be put in complete repair." The reason for the decision in the Werner and Padula Cases is summed up in the following extract from the opinion in the former case, found at page 138 of 49 App. Div., at page 69 of 63 N. Y. Supp., namely:

"If by the terms of his lease rent is to be paid in advance, the tenant comes under an absolute engagement to pay it on the day fixed, and he is not relieved from that engagement by the fact that the property is destroyed by fire, and he is liable to pay the rent due in advance, even though the destruction takes place on the very day it falls due."

I am of the opinion that where the contract is not terminated, but left in existence, and the provision is merely that the rent shall cease, the fairer construction is to hold that there is to be an apportionment or abatement, according as the case may be. If, for example, the damage should occur on the last day of the month and the repairs be completed, say, on the 2d or 3d of the following month, it is not reasonable to suppose that it was intended that the landlord should receive no rent for the entire month, merely because the day on which the rent became due happened to fall in the interim while the premises were untenantable.

On the other hand, it is no more reasonable nor fair to the tenant to hold that in the case of a continuing contract, where the premises are rendered untenantable on the 1st day of the month and remain so throughout the month, he should be held liable for the entire month's rent. This hardship, either upon the landlord or upon the tenant, dependent wholly upon chance, would be even greater in the cases, of which there are many, where the year's rent is paid quarterly, in which event it is conceivable that the landlord might lose a quarter's rent, although the premises might be untenantable only for a few days, or, on the other hand, the tenant might lose the beneficial use of the property for substantially an entire quarter, and still have to pay full rent.

This judgment in favor of the plaintiff must, however, be reversed because of the failure of the jury to follow the proper instructions of the court as to the number of days' deduction to which the defendants were entitled under the construction of the lease as above set forth. Bigelow v. Garwitz, 61 Hun, 624, 15 N. Y. Supp. 940; Kaplan v. Shapiro, 53 Misc. Rep. 606, 609, 103 N. Y. Supp. 922. There is no dispute that the fire occurred on the 6th day of May, and that the repairs were completed not later than Saturday, the 18th. One of the defendants' own witnesses testified that they were completed on the 17th. At the request of the plaintiff's attorney the judge charged the jury that the plaintiff was entitled to $18.05 per day for at least 17 days. This charge was undoubtedly correct. Assuming that the work was not finished until Saturday, the 18th, then rent recommenced certainly not later than Monday, the 20th, making 12 days for the balance of the month, thus requiring only 5 days at the beginning of the month to make up the 17 days mentioned in the court's charge. Notwithstanding this, the jury returned a verdict for $289.34, instead of $306.85, which would have been the correct amount under the judge's charge, thereby throwing the costs upon the plaintiff under the defendants' offer of judgment in the amount of $300 above referred to.

The judgment and order appealed from should be reversed, and a new trial ordered, with costs to the appellant to abide the event.

GREENBAUM, J. (concurring). By the provisions of the lease between the parties the rent of the premises therein demised became payable on the 1st day of each month in advance. Plaintiff's action was for the rent payable on the 1st day of May, 1907, and it is not disputed that, but for the facts hereinafter stated, plaintiff would be entitled to a recovery. Defendants, however, allege as a "partial defense" that under the terms of the lease it was agreed and provided that in case the building erected on said premises shall be damaged by fire, so as to render the same untenantable, the rent shall cease until such time as the building shall be put in complete repair, "and that on or about the 6th day of May, 1907, the said premises were damaged by fire and were rendered untenantable, and the said premises remained in such condition for a period of 15 days from the date of such fire, to wit, from May 6 to May 21, 1907." Defendants also allege a willingness to pay the amount of rental fixed in the lease for May, 1907, "less a sum of money equal to the rental reserved in said lease for 15 days," and ask for a dismissal of the complaint.

Under section 197 of the real property law (Laws 1896, p. 589, c. 547), where "no express agreement to the contrary has been made in writing," the lessee or occupant of a building rendered untenantable and unfit for occupancy, if without his fault or neglect, "may quit and surrender possession of the leasehold premises and of the land so leased or occupied, and is not liable to pay to the lessor or owner rent for the time subsequent to the surrender." Evidently to overcome the ef-, fect of the statute, which gives to a lessee the right to terminate the lease in the event of untenantableness as therein provided, the lease in question provides, among other things, for the contingency of damage to the premises by fire:

"That, in case the damage shall be so extensive as to render the building untenantable, the rent shall cease until such time as the building shall be put in complete repair."

Reading this clause with one that immediately follows it, referring to a case of the destruction of the building by fire, which provides in that event "that the rent shall be paid up to the time of such destruction, and then and from thenceforth this lease shall cease and come to an end," it is evident that the latter clause is a practical reiteration of the provisions of the statute, while the former is designed to prevent the termination of the lease in the case of a condition of untenantableness which may be overcome by repair, and to suspend the payment of rent during the period of repair.

Section 197 of the real property law, which is a substantial re-enactment of chapter 345, p. 592, of the Laws of 1860, was passed as a remedy against the injustice of the operation of the law as it stood prior to 1860, whereby a lessee was not relieved from the payment of the rent reserved in the lease of a building after its destruction and where the benefits of the lease had been practically lost. Under the statute, therefore, in the absence of any agreement to the contrary, where a building was rendered untenantable and unfit for occupancy by reason of a fire, a situation such as is claimed here by the tenant to have existed, the lessee might surrender possession of the premises and terminate the lease.

The parties, however, agreed in the lease that in case of a partial damage by fire the landlord shall repair as speedily as possible, and that, where "the damage shall be so extensive as to render the building untenantable, the rent shall cease until such time as the building shall be put in complete repair." Precedent for the precise situation here disclosed seems to be lacking in this state. Authorities may be found where the question of the tenant's liability to pay rent arose in a case where the lease provided for payment in advance, and where the fire occurred after the due date of payment and before the expiration of the month or term for which the rent was payable in advance, but where the tenancy became terminated by reason of the destruction of the premises. Such a case is Werner v. Padula, 49 App. Div. 135, 63 N. Y. Supp. 68, affirmed on the opinion of the Appellate Division in 167 N. Y. 611, 60 N. E. 1122. The fire clause in the lease in that case was similar in all respects to the one in the lease before us. The tenant had surrendered the premises after their destruction by fire, and, having

paid the rent in advance, he sought to recover for the return of the unearned rent from the date of surrender of the lease. It was held:

"If by the terms of his lease rent is to be paid in advance, the tenant comes under an absolute engagement to pay on the day fixed, and he is not relieved from the engagement by the fact that the property is destroyed by fire, and he is liable to pay the rent due in advance, even though the destruction takes place on the very day it falls due."

This case differs from the Werner Case, in that here there was a partial destruction, resulting in alleged untenantableness of the premises, and under the covenant applicable to such a condition there was not to be a termination of the lease, but a mere suspension of rent until the premises were completely repaired. For whose benefit was the covenant, and what is its legal effect? It may be argued that both lessor and lessee were benefited by it. The former could uphold his lease by repairing. The latter was relieved from the obligation to surrender a possible valuable lease, which could otherwise be terminated, and he could hold the landlord under the covenant to repair. It may also be argued that, if the covenant was mutually beneficial, the loss occasioned by the fire must be borne strictly in accordance with the agreement of the parties. Neither party is advantaged by the fire. One of them must suffer, unless covered by insurance, a feature not to be considered here. If we find for the landlord, the tenant loses the benefit of the use of the premises while they remain untenantable. If we find for the tenant, the landlord would suffer the loss of the rent for that period.

I think a safe guide is found in the rules observed in the Werner Case, supra, and the cases therein cited to the same effect, that the absolute engagement to pay in advance obligates the lessee to pay the rent as agreed. The clause, "The rent shall cease until such time as the building shall be put in complete repair," is quite analogous to the words of the statute that a tenant shall not be "liable to pay the lessor or owner rent for the time subsequent to the surrender, which has been construed as meaning that the tenant was to be relieved from the payment of rent accruing after the destruction of the building." Craig v. Butler, 83 Hun, 286, 288, 31 N. Y. Supp. 963, affirmed 156 N. Y. 672, 50 N. E. 962. By the same rule of construction the clause in the lease, "The rent shall cease until such time as the building shall be put in complete repair," may be held to mean that the operation of the lease as to accruing rent is to be suspended during the period of repairs. It lay with the parties to the lease to agree to their respective obligations and rights as to rent during the period of disrepair, and they could have unmistakably expressed their understanding if they so desired.

But, aside from all that has been said, the defendant's claim for an allowance of rent may not be considered under the pleadings. The claim is set up as a defense, not as a counterclaim. The payment of rent on the 1st of the month was absolute under the lease; hence the defendant is not in a position to avoid it by an event of the nature alleged happening subsequent to the 1st. If he acquired any claim by the subsequent events, it should have been made the subject of an offset or counterclaim.

In addition to what has been stated, there was serious error committed in permitting defendants' witnesses to testify as to the condition

of the machinery and other personal property of the defendants as a consequence of the fire, as bearing upon the alleged untenantableness of the premises. The condition of these articles had nothing to do with the condition of the premises, and the objectionable evidence would necessarily seriously affect the jury upon the main issue presented to them.

Other minor errors were committed at the trial, which require no discussion now, as sufficient has been indicated to require a reversal of the judgment.

Judgment reversed, and new trial ordered, with costs to appellant to abide the event.

GILDERSLEEVE, P. J. (concurring). I agree that the judgment must be reversed, for the reason that, if the tenants have any ground for relief from payment of rent under the facts of this case, it is not available as a defense, and no counterclaim or offset is pleaded. It seems proper to add that, since the tenants were under an absolute obligation to pay the rent sued for herein in advance on the day fixed by the lease, I think they are not relieved therefrom by reason of the subsequent damage by fire, and that the covenants of the lease under consideration can only operate to suspend rent accruing within the period of untenantability; in other words, if the untenantable condition continued and existed at the time the next payment of rent became due, the suspension of rent contemplated by the covenant could be properly set up as an offset or counterclaim.

These conclusions are in accord with the rules laid down in Werner v. Padula, 49 App. Div. 135, 63 N. Y. Supp. 68, affirmed on the opinion of the court below in 167 N. Y. 611, 60 N. E. 1122, and Craig v. Butler, 83 Hun, 286, 31 N. Y. Supp. 963, which are controlling here.